GEORGE W. GRAVES, a Person of Unsound Mind, by J. P. CAYCE, Guardian and Curator, Appellant, v. AMELIA GRAVES.

Division One, March 3, 1914.

1. **JUDGMENT: Writ of Error Coram Nobis: Insanity of Defendant: Fact Kown.** The purpose of a motion in the nature of a writ of error *coram nobis* to set aside a judgment, is to call to the attention of the court some vital fact which at the time of the entry of the judgment was not known to the court. If the record shows that such fact was brought to the knowledge of the court before entry of judgment, for instance, if it was revealed by the petition therein, the motion will not lie, nor can a petition attacking the judgment be considered as such motion. For instance, if the petition stated that the defendant was insane, the fact of his insanity was before the court, and the entry of a judgment against him may be an error of law, but not an error committed by reason of the absence of knowledge of a determinative fact which would have prevented the entry of judgment, and hence a motion in the nature of a writ of error *coram nobis*, based on the fact that defendant was insane at the time said judgment was entered, will not avail to annul said judgment.

2. **PLEADING: Cause of Action: Vesting Title to Wife's Land Deeded to Husband in Partition: Duress.** A petition charging that, in an attempt at friendly partition, between a wife and her brothers and sisters, of lands inherited by them from their father, she was coerced by the duress of her husband to have her coparceners deed the land to him, states a cause of action for divesting the title out of him and vesting it in her, if the facts stated amount to duress.

3. **⸺: ⸺: ⸺: Allegation That Process Was Served on Insane Person Only: Demurrer.** A petition to set aside a judgment, which charges that the petition therefor charged that the defendant therein had been adjudged insane and that the summons was served on him alone and that he had no guardian, must be taken as true when a general demurrer thereto is filed; and the court cannot assume that a guardian *ad litem* was appointed for said insane person, there being no such allegation in the petition, although the petition in the original suit asked that a guardian *ad litem* be appointed for him. Such a petition is good as against a general demurrer. A demurrer admits facts well pleaded in the petition, but it does not admit facts not pleaded; nor can any fact not pleaded be considered in passing on the demurrer.

4. **INSANE DEFENDANT: Summons: Guardian Ad Litem.** Where a defendant has been adjudged insane and a guardian has been appointed for him, the summons should be served on such guardian; where no such guardian has been appointed, the summons should be served on the lunatic personally, and upon suggestion of his insanity a guardian *ad litem* should be appointed for him, to conduct his defense under the supervision of the court, and then the court has power to render judgment affecting the title of the lunatic's property. But a judgment rendered against an adjudged lunatic, whose legally appointed guardian has not been brought into court, or for whom no guardian *ad litem* is appointd, after suggestion of his insanity has been made, would smack of legal if not actual fraud; and a petition so charging states a cause of action for setting aside the judgment, and is good as against a general demurrer. If a guardian *ad litem* was in fact appointed, and that fact was not stated in the petition, that fact should be stated in an answer.

Appeal from St. Francois Circuit Court.—*Hon. Charles A. Killian,* Judge.

REVERSED AND REMANDED.

*B. H. Boyer* for appellant.

*Merrill Pipkin* for respondent.

GRAVES, J.—This cause reached this court on a mandate from the St. Louis Court of Appeals because title to real estate is involved. Plaintiff and defendant are husband and wife. The present action is one brought in equity to set aside a judgment of the circuit court of St. Francois county, by which judgment the title to certain lands had been decreed out of George W. Graves and vested in Amelia Graves. Plaintiff charges that he is the owner of the lands in dispute, and that such judgment although void (as alleged in the petition) is a cloud upon his title.

In 1904 at the May term of the St. Francois County Circuit Court, Amelia Graves brought suit to have the title of about 376 acres of land divested out of George W. Graves, and vested in her. The decree attacked in the case at bar did decree title in Amelia Graves, and divested George W. Graves, the husband, of all title thereto. That petition is attacked in this case, as well as the judgment and proceedings thereon. In that petition Mrs. Graves stated that she was a daughter of David P. Hall, who died seized and possessed of about 1030 acres of land; that said land descended to her and the other children of David P. Hall, and that the heirs agreed upon a partition of the land; that the land involved in the instant action is the part given to her in such partition; that such partition was effected by the several heirs deeding to each other.

From this point the petition had best speak for itself and such portion reads:

"That said land descended to his said children and heirs in equal portions share and share alike, and for the purpose of dividing said inheritance met upon said premises and mutually agreed upon a division thereof, this plaintiff with her husband thereupon exe-

cuted a deed to each of the other said heirs, conveying
to them her interest in each of the tracts selected by
them.   In consideration of her said conveyance, as
aforesaid, the other said heirs were to execute to her
their interest in the portion selected by her, but when
the time for executing said deed arrived the defend-
ant demanded that since he was her husband, the title
to her part of said land should be deeded to him, in-
stead of to her, the said plaintiff, and boldly stated
that unless this was done, he would not work on said
land or provide for plaintiff; whereupon this plaintiff
objected and protested against such a conveyance of her
property to him, her said husband, and refused to join
in such a conveyance, but defendant still insisted that
he must receive the title to her part of said land and
again renewing his threats to not work thereon, or pro-
vide this plaintiff with support, so impressed the plain-
tiff with the belief that if she should longer oppose
him he would not only carry said threats into execu-
tion, but would otherwise conduct himself as to de-
prive her of all future happinesss and render her con-
dition in life intolerable.   By reason of such belief and
deep anxiety and stress of mind that it produced, this
plaintiff was wholly deprived of the power of longer
resisting her said husband's demands, and other heirs
of said David P. Hall, deceased, to-wit, Marinda Mc-
Clenahan *nee* Hall and Peter B. McClenahan, her hus-
band, Edward D. Hall and Mary J. Hall, at the in-
stance and request of defendant, conveyed by a gen-
eral warranty deed their interest in that part of said
tract selected by plaintiff, as her part of her deceased
father's land, to her said husband, the defendant.   Said
land so conveyed is situated in St. Francois county,
Missouri, and is further described as follows, to-wit:
The north half of the northeast quarter of section 25,
township 38, range 5, and the northeast quarter of the
southeast quarter of section 12, township 38, range 5,
and the south part of the south half of the southeast

quarter of section 24, township 38, range 5, and the south part of the south half of the southwest quarter of section 19, township 38, range 6; and the north half of the northeast quarter of section 19, township 38, range 6, and the southeast quarter of the northeast quarter of section 19, township 38, range 6, and the northeast quarter of the northwest quarter of section 30, township 38, range 6, containing in the aggregate 375.80 acres.

"Plaintiff further states that within a few years after the execution of the deed as aforesaid, plaintiff again protested against defendant holding the land that she had inherited from her deceased father and to which she was entitled, and insisted upon a conveyance of the same to her; whereupon the said defendant stated to her that the land belonged to her, and that he would reconvey the same to her: that this promise to reconvey was rendered from time to time until about two years ago, when he finally notified her that he would not only not reconvey the land to her but that he had consulted a lawyer, and intended to have her ejected from the premises.

"Plaintiff further states that defendant had nothing when they were married, but that they immediately moved on the premises in dispute where both plaintiff and defendant lived until about two years ago, when defendant left plaintiff without any cause or provocation whatever, and has refused to provide any means of support for plaintiff. Plaintiff further states that she is in sole possession of said premises and by working and cultivating them is able to provide herself with a scanty support, but if deprived of them would be wholly dependent upon charity for the remainder of her life.

"Plaintiff further states that the defendant has been declared by the probate court of St. Francois county, Missouri, to be insane, and is now confined in Hospital Number 4. of Missouri for the Insane, and

plaintiff would therefore ask the court to appoint a guardian *ad litem* to represent the defendant in this proceeding in the manner provided by law.

"Whereupon plaintiff prays the court to declare the defendant (or guardian representing him) a trustee as to the lands last above described and order him to convey said property to her by good and sufficient conveyance, and for such other orders as to the court may seem meet and proper in the premises, and for costs."

In that case the summons was served upon George W. Graves. It seems that he had no guardian at that time. Now reverting to the petition in the case before us at this time it will perhaps be best to set out the material portions thereof, because the case passed off upon a demurrer below. After charging that he was and still is the owner of the land in question, and that he was adjudged insane in 1901 by the probate court of the county, and the previous suit and judgment and that a guardian (now representing him in this suit) was appointed for him, the petition then thus proceeds:

"Plaintiff further states that the petition constituting defendant's alleged cause of action in the suit instituted as aforesaid by her showing upon its face that the legal title to all of said lands and property aforesaid, and in her said petition described, was at the time in this plaintiff; showing upon its face that this plaintiff, George W. Graves, defendant therein, was a person of unsound mind; that said petition further shows upon its face that said George W. Graves, the plaintiff herein, had been found and adjudged to be a person of unsound mind prior to the institution of said suit by the defendant herein, Amelia A. Graves, and further shows on its face that said Graves, this plaintiff, was at the time of the institution of this suit by defendant, an inmate of State Hospital No. 4 at Farmington, Missouri, for the Insane; that said petition

aforesaid of defendant further shows upon its face that this plaintiff, George W. Graves, has no legally appointed guardian and that the return of the sheriff on the writ of summons sued out by defendant in her suit aforesaid shows upon its face that the summons. was served upon this plaintiff, George W. Graves, and that said summons nor any other process in said cause was ever served upon anyone who was or who purported to be the guardian for this plaintiff. Plaintiff further states that the said petition of defendant aforesaid filed as aforesaid by her as her said alleged cause of action aforesaid shows upon its face that defendant was not entitled to any legal or equitable relief and that said petition further shows that the alleged facts and matter set forth in her said petition aforesaid and upon which she prayed relief were not such facts and matters as were capable of legal and competent proof, and that the said petition on its face shows that no cause of action was therein stated and that no such facts were therein stated as to constitute a cause of action for any purpose. That said petition of defendant aforesaid shows on its face that the allegations therein contained and set forth were not sufficient to support any judgment nor decree of any character whatsoever except an order of dismissal.

"A certified copy of said petition of defendant filed as aforesaid by her against this plaintiff is herewith filed and hereto attached and is hereby made a part of this petition and is marked 'Exhibit A.'

"Plaintiff further states that the said defendant, Amelia A. Graves, wife of the plaintiff aforesaid, did on or about said 5th day of July, 1904, sue out a writ of summons upon her said petition aforesaid. That thereafter and on or about the 8th day of July, 1904, aforesaid, the sheriff of said county of St. Francois aforesaid, in obedience to the command of said writ of summons aforesaid, did serve same by delivering a copy of said writ and a copy of said petition into

the hands of the defendant therein, the plaintiff here-
in, as shown by the return of said sheriff on said sum-
mons. That the said summons nor any other process
in said cause was ever served upon any one purporting
to be the guardian of this plaintiff, the defendant there-
in, as is evidenced by a certified copy of said writ of
summons, together with a certified copy of the return of
the sheriff aforesaid thereon, which are hereto at-
tached and made a part of this petition and marked
'Exhibit B.'

"Plaintiff further states that on or about the 15th
day of August, 1904, and during the regular August
term of said county court of St. Francois county, Mis-
souri, said cause came on to be heard by the court
upon the said petition of the defendant herein in the
absence of this plaintiff, the defendant therein, and
while this plaintiff was restrained of his liberty at
the Hospital for the Insane aforesaid and in the ab-
sence of anyone who was legally authorized to appear
for or on behalf of this plaintiff, and said court afore-
said at the time aforesaid did by its pretended decree
and judgment in said cause divest the legal title to
all of said lands and property aforesaid out of this
plaintiff, the defendant therein, and did thereby vest
or attempt to vest the legal title thereto in the defend-
ant herein. Plaintiff further states that the record
of said cause shows on its face that the court had no
jurisdiction over either the person of the defendant
therein, or over the subject-matter of the said suit.
That the original files in said cause and the record
thereof show upon their face that this plaintiff, the
defendant therein, was never served with process as
required by law and that this plaintiff never had his
day in court. Plaintiff, therefore, states that said de-
cree is a fraud upon his rights in the premises and
that same is a nullity and void.

"Plaintiff further states that the said decree afore-
said entered and rendered as aforesaid in said cause

has cast a cloud over the title of his said lands and property, and that by reason and as a consequence of the rendition of said decree aforesaid he has been since said 15th day of August, 1904, and that he still is deprived of the use and enjoyment of his said property and of the proceeds thereof.

"Wherefore the plaintiff prays the court to set aside, cancel and annul and for naught hold the aforesaid judgment and decree entered as aforesaid against him in said cause, and that he have and recover his costs herein expended."

To plaintiff's petition a general demurrer was filed and by the court sustained, and judgment entered for defendant, thus:

"Now at this day comes plaintiff by his attorney, and defendant in person as well as by her attorney, and defendant withdraws her answer and files demurrer, which said demurrer the court now takes up, is heard and argued, and the court being fully advised, sustains the same. Therefore it is considered, ordered and adjudged that plaintiff take nothing against defendant by reason of said writ, and that judgment be rendered in favor of defendant for the costs. Plaintiff objects and excepts at this time."

From such judgment the plaintiff has appealed, and the matter is here.

I.   The plaintiff makes two assignments of error, thus:

"The court erred in sustaining defendant's demurrer to plaintiff's bill or petition for the reason that said bill or petition was good as a bill in equity in a direct attack upon a void or voidable judgment.

"The court erred in sustaining the demurrer to plaintiff's petition for the reason that said petition was good as a motion for review, or in the nature of a writ of error *coram nobis*."

Graves v. Graves.

These we shall take in inverse order. Plaintiff's petition cannot be considered as a motion in the nature of a writ of error *coram nobis*. So considered the finding would have to be against the plaintiff. Upon the very face of the petition it is shown that in the original suit the court was fully advised of the mental condition of the present plaintiff at that time.

**Motion in Nature of Writ of Error Coram Nobis.**

In the original suit the present plaintiff was the defendant and the present defendant was the plaintiff. It is charged in the original proceeding that the defendant was insane and had been adjudged insane, and was then confined in an asylum. The purpose of a motion in the nature of a writ of error *coram nobis* is to call to the attention of the court some fatal fact, which at the time of the entry of judgment was not known to the court. If the record shows that such fact was brought to the knowledge of the court before entry of judgment then a motion in the nature of a writ of error *coram nobis* will not lie. In such case there is nothing upon which to predicate such a motion. These motions only go to errors of judgment occasioned by the absence of some fatal facts, and not to errors committed with the facts known. To illustrate, if a judgment is entered against one actually insane, and the fact of insanity was not known to the court at the entry of the judgment, then the motion as a general rule will lie, but if the record discloses, as it does here, that the fact of insanity was before the court entering the judgment, then the action of the court in entering the judgment may be an error of law, but not an error committed by reason of the absence of a determinative fact—a fact the knowledge of which would have prevented the entry of the judgment. This court has had occasion to review the doctrine of motions in the nature of writs of error *coram nobis,* in very recent cases, and it is safe to say that the motion will not lie where the fact relied upon in the motion is one known to the

court at the entry of the judgment. [Reed v. Bright, 232 Mo. l. c. 411; State v. Stanley, 225 Mo. l. c. 532; Marble v. Vanhorn, 53 Mo. App. l. c. 364; Asbell v. State, 62 Kan. l. c. 214; 5 Ency. Pl. and Prac., p. 29.]

So that if the plaintiff here is relying upon the fact of insanity to base a motion in the nature of a writ of error *coram nobis,* there is no foundation for the writ, because the fact was before the trial court in the original case.

If the plaintiff goes further and says that the motion should prevail because of the fact that no service was had upon his guardian in the original suit, this contention must fail for two reasons, (1) because such fact is one patent of record, and we have a statute that applies to such cases, section 2121, Revised Statutes 1909, which statute clearly contemplates the filing of such motion in the original case, which is not true here, and (2) because the plaintiff by the present petition has elected to go into equity or attempt to go into equity, and thus waives his right to follow statutory methods. So that we conclude that the plaintiff's case must stand here upon the theory that it is a bill in equity to clear his property of an alleged cloud thereon occasioned by the judgment aforesaid.

II.   Coming now to the second question raised, does this petition state a cause of action? It does not state a cause of action in so far as it attacks the original judgment on the ground that the petition of Amelia Graves in the original suit did not state a cause of action.   That petition is one which would entitle her to the relief prayed had she succeeded in getting

Pleading:   the defendant in such suit properly be-
Cause   fore the court and made proof of the
of Action.   facts charged in the petition.   The facts there charged in effect said that Graves procured his legal title to the land by duress.   When the marriage relation is considered the allegations of that petition

make a good case. We must therefore seek other substantive allegations in the petition in the instant case, before we can say the trial court was in error in sustaining a demurrer thereto.

The other allegations of the petition may be shortly stated. It avers that Graves was personally served in the original suit, but that his guardian was not served, and as these matters can be made to appear from the files in the case, the judgment should be declared void, and set aside as a cloud upon his title. We shall proceed upon the theory that the judgment is in such shape as to cast a cloud upon his title, and for that reason an action in equity will lie. In the brief for the respondent it is stated that in the original suit the court appointed a guardian *ad litem* for George W. Graves, before a trial of the cause, and that therefore the proceedings were regular. This matter cannot be considered here. This case stands here upon a demurrer to the plaintiff's petition. No such averment is made in the petition in the instant case. On the contrary the petition charges that in the original suit he was served personally, as shown by the summons and the sheriff's return thereon, and that a judgment was rendered against him on that service. Nothing is said either in the petition or the demurrer about a guardian *ad litem*. We must adhere to the allegations of the petition here. If it states facts for relief, we must sustain it, although outside of the record before us there may be other facts detrimental to plaintiff's alleged cause of action. These matters might be raised by answer, but not by general demurrer. Nor need we discuss the power of the court to appoint a guardian *ad litem*, because not within the purview of the issues made in the case. Nor can we consider the charge made in the brief that Graves had no guardian at the date of the former suit, and that the present guardian, joined with him herein, was appointed afterward, for the purpose of this suit, be-

cause such question is not here upon the record before us. We can only consider the allegations of the petition and the demurrer. The demurrer admits the facts well pleaded in the petition, but these facts about a guardian *ad litem,* or the nonexistence of a guardian at the date of the former suit, are not in the petition.

If it appears, as in the petition charged, that Graves had been previously adjudged insane, and was at the time insane, and confined as a lunatic, and that such fact was known to the court when it rendered the judgment, should the plaintiff have relied upon those facts when coupled with the further fact that the judgment does cloud his alleged title? That is the question here, and the only question. How defendant may obviate these charges by No countervailing facts, rests with her upon an answer which she may file, if this petition be declared good. This petition in effect attempts to charge a legal fraud in the very concoction of the judgment sought to be set aside. It charges that the plaintiff in the original suit advised the court that the defendant was insane, and was then confined as such, and with this knowledge the court entered a judgment against him. It does not charge fraud in fact or in specific terms. Is such petition good against a general demurrer? It must be noted at this point that the petition nowhere charges that Graves had a guardian at the time of the original suit. Had this petition charged that Graves had a guardian at the date of the first suit, then there could be no question that such guardian should have been served with process (R. S. 1909, sec. 514; Bank v. Berry, 79 Mo. App. 472); and the further charges in the petition would have entitled him to relief in equity. Under chapter 2, article 19, which deals with "Guardians and Curators of Insane Persons," we find this section 514, supra, which reads:

Insane Defendant: No Guardian.

"In all actions commenced against such insane person, the process shall be served on his guardian; and, on judgment against such insane person or his guardian, as such, the execution shall be against his property only."

This section, as the context of the chapter shows, has reference to lunatics who have been adjudged insane, and had guardians appointed. It has no reference to lunatics without guardians. The general rule is, that a lunatic without a guardian, although having been adjudged insane, can be sued. Thus in 22 Cyc. 1224, it is said:

"An insane person not under guardianship may be sued the same as a sane person. At common law the rule was the same after inquisition of lunacy and the appointment of a guardian or committee; but now if there be a committee or guardian it is generally necessary to join him as a party defendant, and in some states plaintiff is required to obtain leave of court before instituting suit against an adjudged incompetent. After restoration to sanity the former lunatic may of course be sued the same as any other person."

And in such case, where there is no guardian, the court can appoint a guardian *ad litem* to make the defense. Thus in 22 Cyc., 1231, the rule is stated:

"But where no guardian or committee has been appointed, or if appointed refuses to qualify or has been removed, the action may be prosecuted or defended in his name, with the sanction of the court, by any competent person as the insane person's next friend, even though the lunatic has not been judicially declared insane, if it otherwise appears that he is insane. A next friend may prosecute a writ of error in his insane defendant's behalf, or may bring a suit to protect the lunatic's estate through a receivership until a guardian can be appointed; but a suit brought by

a next friend is substantially that of the insane person, and he has no authority to bind the lunatic or his estate, and is subject to removal at any time by order of the court.''

And on page 1233 it is further announced as the rule:

''Likewise where a guardian or committee has not been appointed, or if appointed refuses to qualify or has been removed, a guardian *ad litem* should, upon a proper suggestion or petition, be appointed to defend in the name of the insane person, even though defendant has not been judicially declared insane, if the fact of insanity is shown by affidavit or otherwise. A guardian *ad litem* so appointed is under the direct control of the court, and may make any defense either by way of answer or cross bill or both that occasion may require or the court may order.''

This court has specifically recognized the rule in the case of Bensieck v. Cook, 110 Mo. l. c. 183, whereat we said:

''The trial court pursued the right course in appointing a guardian *ad litem* for defendant, Joseph Cook. [Mitchell v. Kingman, 5 Pick. 431; Buswell on Insanity, sec. 132; Sturges v. Longworth, 1 Ohio St. 544.] And the power of the court to appoint such a guardian, of necessity, concedes the power of the court, upon the proper basis of facts being presented, to render a judgment as binding on the lunatic and his property interests, as a similar judgment would be upon a sane person.''

In that case, like this, Cook was in confinement for insanity when service of summons was had. In Cyc. under the paragraph quoted will be found a collection of the cases supporting the rule. It is safe to say that an adjudged lunatic without a guardian, may be sued, by having personal service of summons upon him, but upon suggestion of insanity, a guardian *ad litem* should be appointed, to conduct his case under the supervi-

sion of the court. When such is done, then the judgment binds the lunatic. But the trouble with the case at bar is that this petition seems to aver that this judgment in the original case was rendered without such steps. If so it states a good cause of action. If no guardian *ad litem* was appointed, then the lunatic never had his day in court in the full sense of the term, and a judgment rendered against him after a suggestion of lunacy as here, would smack of legal if not actual fraud. It may be that this petition has been artistically drawn for the purpose of withholding the fact of a guardian *ad litem*, but if so the defendant should have cast her anchor windward, and not contented herself with a demurrer. As it stands, we think this petition stated a cause of action, and the trial court erred in sustaining the demurrer. Upon a reversal of this judgment the defendant can by answer supply such facts as are not truthfully outlined in the petition, and thus place all the facts before the court.

Judgment reversed and cause remanded. All concur.