245 S.W.2d 839 (1952)
BLODGETT
v.
STATE.
No. 42689.
Supreme Court of Missouri, Division No. 1.
February 11, 1952
*840 No brief for appellant.
J. E. Taylor, Atty. Gen., Samuel M. Watson, Asst. Atty. Gen., for respondent.
CONKLING, Presiding judge.
This appeal was taken because the circuit court had refused to issue a writ of error coram nobis to set aside a judgment theretofore entered in a criminal cause. On March 9, 1950, Norman Lee Blodgett (plaintiff-appellant), hereinafter called appellant, a prisoner in the state penitentiary filed in the circuit court of Saline County, Missouri, his petition for the issuance of a writ of error coram nobis to set aside the hereinafter mentioned judgment wherein he was sentenced to life imprisonment. His petition alleged that in May, 1948 he was charged by Information in the Saline County circuit court in case No. 3143 with murder in the first degree, in that, on May 23, 1948 in Saline County, he had shot and killed one J. O. Freeman; that prior to November 6, 1948, by and through his counsel, he had entered a plea of guilty under the Information against him and that on November 6, 1948, said plea of guilty was accepted and he was thereupon sentenced to life imprisonment.
His petition for the writ further alleged that at the time of the commission of the above offense on May 23, 1948, and on November 6, 1948 and for a number of years prior to the commission of the crime he had been insane; that the fact that he was at such times so insane was new evidence which, at the time of plea and sentence as above was unknown to said circuit court, to the prosecuting attorney, to appellant and his attorneys, and was not available to the court at the time of appellant's plea and sentence; that on November 6, 1948, and prior, appellant, because of his insanity, was incompetent to make, offer, advise or suggest *841 any procedure to his attorneys; that appellant sought the writ of error coram nobis to bring to the attention of the trial court the fact of his prior insanity, which, if it had been known to the court, would have resulted in a different judgment in said case No. 3143; that the alleged insanity was an error of fact which affected the validity and regularity of said proceedings wherein appellant was sentenced on November 6, 1948; that on said last date appellant was an indigent insane person incompetent to take any steps in said cause or enter any plea therein; that he "is now perfectly normal and sane"; and "that appellant is not attempting to attack the competence of his court appointed attorneys (in case 3143) nor to disparage their ability."
Appellant's petition further alleged that on the 6th day of August, 1947 in the Probate Court of St. Louis County he was adjudged to be an insane person and was committed to State Hospital Number 1 as such; that he was released or paroled from said State Hospital in March, 1948.
In due time after the filing of the instant petition for the writ said circuit court appointed counsel for appellant, set his petition for hearing and ordered appellant produced in court for said hearing. Thereafter the state filed its answer admitting appellant had been charged by information as above set out in case No. 3143, that he had been sentenced to life imprisonment in said case, and denied all other allegations of appellant's petition and prayed the same be dismissed. At the hearing of the issues joined on the appellant's petition for the writ and the state's answer thereto in the circuit court on June 7, 1950, the prosecuting attorney appeared for the state and appellant appeared in person and by his counsel, Robert L. Hoy and Martin J. Ward.
It appears from the transcript of the hearing in said circuit court upon the trial of those issues on August 6, 1947, that appellant was born October 10, 1929, was committed to the state school at Marshall, Missouri, in April, 1941, but escaped therefrom in June, 1945; that appellant was adjudged insane in the probate court of St. Louis County, Missouri, and committed to State Hospital No. 1 at Fulton "to be there treated and confined as a county patient"; that he was released from State Hospital No. 1 on March 21, 1948.
It further appears that appellant's mother there testified that it was her opinion that on November 6, 1948 appellant was insane; that after the 1948 murder charge was filed against appellant she had numerous conferences in Marshall and in St. Louis with the attorneys who had been appointed to represent appellant, and in Marshall with her son; that she was in court on November 6, 1948 when her son was sentenced; that in her conferences with his counsel and before her son was sentenced she related to his counsel her son's life history, conduct, prior activities, background and had told her son's counsel that he had been adjudged insane in St. Louis County, had been confined in various state correctional institutions, and had been released from State Hospital No. 1 in March, 1948; and that on the day of but prior to sentence being pronounced upon appellant, in open court, appellant's counsel stated to the circuit judge her son's history and that appellant had been in the various state institutions, including State Hospital No. 1.
It further appears that Dr. E. F. Hoctor, superintendent of the State Mental Hospital at Farmington, and experienced in the study of nervous and mental diseases for more than 25 years, testified that in the summer of 1948 he and Doctor Johnson examined appellant in the Saline County jail; that their medical conclusion and opinion from that examination was that the appellant was then sane and that he was also sane on November 6, 1948; that appellant was mentally clear, his talk was relevant, his memory good, his continuity of thought was clear.
It also appears that Dr. W. J. Cramer, superintendent of State Hospital No. 1, testified appellant was admitted to that mental hospital August 13, 1947 and was discharged therefrom on March 21, 1948; that the official diagnosis of the appellant by the hospital staff of doctors was a psychopathic personality, which, "indicates that the individual is of sound mind"; that appellant was "released because in our opinion he was *842 not insane and didn't belong in the hospital." The sheriff, in whose custody appellant remained while in jail in 1948 awaiting trial, testified that he observed no outward manifestations, no threats, fits, action or conduct indicating there was anything mentally wrong with appellant; that appellant always acted perfectly normal and was a good prisoner.
At the hearing on appellant's petition Harold Harvey and Herbert Butterfield, the attorneys who had been appointed to defend appellant in the murder case in the Saline County circuit court in 1948, and who in fact did represent him in that case, testified that during the course of their representation of appellant in that case they had many conferences with appellant's mother about appellant in Marshall and in St. Louis, and many conferences with appellant; that they interviewed the witnesses and investigated all the circumstances; that appellant's mother fully advised them of appellant's life history and of the various institutions wherein appellant had been confined; that they discussed with appellant's mother the plea to be made for defendant to the murder Information, and that she made no objection when advised that it was counsels' judgment that a plea of guilty should be made; that they saw the certified copy and knew of the adjudication of the Probate Court of St. Louis County; that they were advised that Doctor Hoctor and Doctor Johnson had made a mental examination of appellant and "had found him to be sane"; that a week or ten days before November 6, 1948 they conveyed all their information about appellant to the court (Judge Phil H. Cook); that again "at the time the plea was entered a statement was made in open court" to the court fully covering the appellant's history and institutional history, his commitment to State Hospital No. 1, and the court was fully advised of all of those matters and of the examination by and conclusions and opinion of Doctor Hoctor before the plea was accepted or sentence was imposed.
The court made findings of fact, and found there was no proof that the 1947 insanity adjudication and other matters concerning appellant's sanity were not brought to the attention of appellant's counsel and of the court prior to sentence; that it affirmatively appeared that appellant's counsel and the court were fully advised upon the sanity question; that in the murder case the court had appointed "two good lawyers" to represent appellant; and that those lawyers "went to extensive effort and paid expenses out of their own pockets in investigating * * * (and) they made those disclosures to the court." The court then denied appellant's petition for the writ. The motion for new trial filed by the appellant was overruled by the court.
The writ of error coram nobis is a remedy of the common law. Application therefor is made to the trial court to correct errors of fact affecting the validity of the proceedings which, at the time of the trial of the particular case, were unknown to the party seeking the relief and to the court. It is considered to be a new action and its purpose is to revoke the former judgment. It is recognized in Missouri. State v. Ashworth, 346 Mo. 869, 143 S.W.2d 279; Dusenberg v. Rudolph, 325 Mo. 881, 30 S.W.2d 94; State ex rel. Orr v. Latshaw, 291 Mo. 592, 237 S.W. 770; State v. Richardson, 291 Mo. 566, 237 S.W. 765; Badger Lumber Co. v. Goodrich, 353 Mo. 769, 184 S.W.2d 435; Simms v. Thompson, 291 Mo. 493, 236 S.W. 876; Sanders v. State, 85 Ind. 318; Ernst v. State of Wisconsin, 179 Wis. 646, 192 N.W. 65, 30 A.L.R. 681, 686, 24 C.J.S., Criminal Law, § 1606, p. 143, et seq., 31 Am.Jur.Judgments, § 798.
Where the question of the sanity of one charged with crime was suggested either formally or informally to the court, at or before the trial, or conviction upon plea of guilty, the writ will not lie to raise the insanity question to set aside a judgment of conviction. Graves v. Graves, 255 Mo. 468, 164 S.W. 496, State v. Richardson, supra, Sease v. State, 157 Ark. 217, 247 S.W. 1036, Kelley v. State, 156 Ark. 188, 246 S.W. 4, People v. Superior Court, 4 Cal.2d 136, 47 P.2d 724, People v. Walton, 10 Cal.App.2d 413, 51 P.2d 1117. If the record discloses that the fact of insanity was before *843 the court before the entering of the judgment, then "the action of the court in entering the judgment may be an error of law, but not an error committed by reason of the absence of a determinative fact, a fact the knowledge of which would have prevented the entry of the judgment." Graves v. Graves, supra [255 Mo. 468, 164 S.W. 499]. The writ of error coram nobis is not a writ of right and is not allowed as of course. If is considered a writ of necessity. State v. Richardson, supra. The writ is issued only if it be made to appear with reasonable certainty that some error of fact not apparent on the record was unknown to counsel and the court, knowledge of which on the part of the court would have prevented the entry of the judgment in question. Simms v. Thompson, supra, Ernst v. State of Wisconsin, 179 Wis. 646, 192 N.W. 65, 30 A.L.R. 681. In proper cases the writ has been issued to set aside a judgment of conviction in a criminal case entered upon a plea of guilty which is the result of duress, State v. Richardson, supra, or mistake of fact, i. e., where a fact was not known which ought to have been known, and which, if it had been known would have compelled a different judgment.
Looking more closely at the situation in the instant case it appears that prior to May 23, 1948, the date of the offense, appellant had been in various correctional institutions; that under a commitment from the Probate Court of St. Louis County he was a patient in State Hospital No. 1 from August 13, 1947 to March 21, 1948; that while he was in the Saline County jail awaiting trial upon the instant Information he was there examined by Doctor Hoctor and Doctor Johnson who reached the opinion that he was sane; that all of those facts and other related matters, were known to appellant's counsel and were by them stated to the court; that on November 6, 1948, prior to sentence being pronounced, all of the above facts and others were restated to the court in open court by appellant's counsel and the prosecuting attorney and in the presence of appellant's mother.
Under these circumstances not only was the sanity question suggested to the court before sentence, but appellant's counsel had fully advised the court and gave the court all the available information with respect thereto. It cannot be said that the court acted in ignorance of the facts as to sanity or insanity. In this situation the writ of error coram nobis will not lie and the circuit court of Saline County did not err in refusing to issue it. Under similar circumstances it was said in State v. Richardson, supra [291 Mo. 566, 237 S.W. 769], "The court's knowledge of the error of fact established, its ruling upon same became a matter adjudicated, not to be interfered with except in the presence of the most cogent countervailing proof." In Graves v. Graves, supra, this court said: "* * * the motion (for writ of error coram nobis) will not lie where the fact relied upon in the motion is one known to the court at the entry of the judgment. (Citing cases.) So that, if the plaintiff here is relying upon the fact of insanity to base a motion in the nature of a writ of error coram nobis, there is no foundation for the writ, because the fact was before the trial court in the original case."
Our conclusion above stated makes it unnecessary to discuss the suggestion that the court, upon the hearing on the petition below, should not have permitted Doctor Hoctor to testify as to the conclusions reached upon the examination of appellant in the summer of 1948. The testimony was proper and admissible. State v. Church, 199 Mo. 605, 98 S.W. 16, 23(10), State v. Cochran, 356 Mo. 778, 203 S.W.2d 707. But in any event the court knew before sentence of the results of that examination, and knew all other relevant facts respecting the sanity or insanity of appellant, and such sanity question was definitely before the court prior to sentence being pronounced.
It follows that the circuit court did not err in refusing to issue the writ prayed for to set aside the judgment in case No. 3143; and its judgment in this case refusing to issue such writ of error coram nobis must be affirmed. It is so ordered.
All concur.